IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA GARSON,<br>Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 10-1612 |
| HVAC CORPORATION, INC.,<br>STEPHEN FOX, and YISHAI KEDAR,<br>Defendants. | : | |

DuBOIS, J.     November 8, 2010

**MEMORANDUM**

**I.  INTRODUCTION**

Plaintiff Barbara Garson filed a Complaint under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. against HVAC Corporation, Inc., ("HVAC") and two managers, Stephen Fox and Yishai Kedar ("defendant managers"), employed by HVAC. Defendants have moved to dismiss the Complaint, arguing that plaintiff has not pled a violation of ERISA Section 510 and that defendants Fox and Kedar are not proper parties to this action. (Mot. to Dismiss at 4-6.) For the reasons that follow, defendants' Motion to Dismiss is denied.

**II.  BACKGROUND**

Plaintiff was employed by HVAC for approximately seven years and for the relevant portions of her employment was insured under HVAC's group health insurance plan. (Pl.'s Compl. at ¶¶ 11-12, 14.) Towards the end of her employment with HVAC, plaintiff was undergoing treatment for high blood pressure and other medical conditions and began making more frequent use of her health care benefits. (Id. at ¶¶ 15-16.)

Plaintiff avers that, as a result of this increased use of her health care benefits, defendant managers initiated a discussion of her use of the group health plan, complained that she was costing the company too much money, and informed her that she was no longer eligible for health insurance through HVAC. (Id. at ¶¶ 17-18.) Plaintiff worked for a short period without health insurance, during which time she learned that other employees and even some non-employees were being offered access to HVAC's group health plan. (Id. at ¶ 19.) During this period and in response to defendants' inquiries regarding her use of benefits and cost to HVAC, plaintiff told defendant managers that she had discovered defendants were partaking in selective allocation of health insurance benefits amongst HVAC's employees and providing benefits to non-employees. (Id. at ¶ 20.) Shortly after this confrontation, defendants terminated plaintiff's employment. (Id. at ¶ 22.)

Plaintiff claims that defendant managers made both the decision to exclude plaintiff from HVAC's group health plan and the subsequent decision to terminate her employment. (Id. at ¶ 23.) She alleges further that defendants excluded her from health care coverage because of her use of those benefits and that both her use of benefits and her complaints about discriminatory treatment under ERISA were motivating factors in the decision to terminate her employment. (Id. at ¶¶ 26-30.)

Defendants have moved to dismiss plaintiff's complaint on two grounds. First, defendants contend that under the Third Circuit's decision in Edwards v. A.H. Cornell and Son, Inc., 610 F.3d 217 (3d Cir. 2010), plaintiff has not plead a cognizable violation of ERISA Section 510, 29 U.S.C. § 1140. (Mot. to Dismiss Pl.'s First Am. Compl. at 4-6.) Second, defendants argue that even if plaintiff has a cognizable claim under ERISA, defendants Fox and Kedar are not appropriate parties because Section 510 claims can only be brought against a person's employer. (Id. at 6.)

## III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion. "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court utilized a "two-pronged approach" which it later formalized in Iqbal. Iqbal, 129 S. Ct. at 1950; Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Under this approach, a district court first identifies those factual allegations which constitute nothing more than "legal conclusions" or "naked assertions." Twombly, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. Iqbal, 129 S. Ct. at 1950. The court then assesses "the 'nub' of the plaintiff['s] complaint – the well-pleaded, nonconclusory factual allegation[s] . . . to determine" whether it states a plausible claim for relief. Id.

## IV. Section 510's Whistleblower Protection Provision and Internal Complaints

Defendants argue that under the Third Circuit's recent decision in Edwards, 610 F.3d 217,

plaintiff has not plead a cognizable violation of ERISA Section 510, 29 U.S.C. § 1140. (Mot. to Dismiss Pl.'s First Am. Compl. at 4-6.)

### A. Plaintiff's Complaint States Two Distinct Claims Under Section 510

Section 510 has two parts that protect employees from retaliation related to their ERISA benefits. The first part protects employees from termination or other retaliation for exercising rights under a health care plan:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140. The second part protects whistleblower employees against retaliation for speaking out about employer ERISA practices:

> It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act.

Id.

Defendant argues that plaintiff's complaint must be dismissed in its entirety because, under the Third Circuit's recent decision in <u>Edwards</u>, 610 F.3d 217, plaintiff has not properly pled a claim under the whistleblower protection provision of Section 510. In making this argument, defendants have misunderstood either plaintiff's complaint or the applicable law. While plaintiff does plead a violation of the whistleblower protection provision, plaintiff also pleads a violation of the first part of Section 510, which protects employees from termination or other retaliation for exercising rights under a health care plan. Specifically, plaintiff claims that she was discriminated against and fired

because she made heavy use of her employer-provided health insurance plan. (First Am. Compl. ¶ 20-21, 25-27.) A claim based on retaliation for use of benefits is unaffected by the ruling in Edwards, which expressly concerned only the whistleblower provision of Section 510. See 610 F.3d at 220. Claims based on retaliation for use are viable where a plaintiff alleges, as Garson does in her complaint, that her employer engaged in prohibited conduct for the purpose of interfering with an ERISA-protected benefit. See Jakimas v. Hoffmann La Roche, Inc., 485 F.3d 770, 785 (3d Cir. 2007) (citing Gavalik v. Cont'l Can Co., 812 F.2d 834, 852 (3d Cir. 1987)); Kowalski v. L & F Prods., 82 F.3d 1283, 1287 (3d Cir. 1996).

Plaintiff has stated a viable claim under the clause of Section 510 that protects employees from retaliation for using their benefits and a separate claim under the clause that protects whistleblowers. Because plaintiff has stated two separate claims under ERISA Section 510 and defendants only attack one of these, the Court will treat defendants' motion to dismiss as a motion to dismiss in part.

### B. Solicited Internal Complaints Under Section 510

While the Edwards decision has no bearing on plaintiff's claim based on retaliation for the use of her benefits, it is still relevant to the viability of her whistleblower retaliation claim. Plaintiff argues that she was fired in part because she complained about HVAC's discriminatory and illegal activities in response to inquiries made by defendant managers. (First Am. Compl. ¶¶ 29-31.) This is different from the situation presented in Edwards. In Edwards the Third Circuit addressed the question of whether Section 510 "protects an employee's unsolicited internal complaints to management." 610 F.3d at 218. The Edwards court described the situation as follows:

> Plaintiff does not allege that anyone requested information from her or

> initiated contact with her in any way regarding the alleged ERISA violations. Nor does she allege that she was involved in any type of formal or informal gathering of information. She states merely that she objected to or complained about certain conduct by Defendants.

Id. at 219. The court ruled that such unsolicited internal complaints are not protected under Section 510. Id.

The question of whether solicited internal responses qualify for protection depends on whether an intra-office discussion with management can qualify as an "inquiry" under the terms of the statute. This question has not yet been addressed by the Third Circuit, and the Edwards decision contains dicta supporting arguments on both sides of the issue. For example, the Edwards court quotes passages from the Second Circuit's decision in Nicolaou v. Horizon Media, Inc. to the effect that solicited complaints would qualify as part of an inquiry and should thus be protected, 610 F.3d at 222 (quoting 402 F.3d 325, 329 (2d Cir. 2005)), and passages from the Fourth Circuit's decision in King v. Marriott Int'l, Inc. arguing that the phrase "inquiry or proceeding" only extends to formal legislative, judicial, or administrative processes occurring outside the office, 610 F. 3d at 223 (quoting 337 F.3d 421, 427 (4th Cir. 2003)). However, anything that Edwards says about solicited internal complaints it says in dicta, which this Court need not follow.

The Court's interpretation of Section 510 must begin by examining the language of the ERISA statute. Wolk v. Unum Life Ins. of Am., 186 F.3d 352, 355 (3d Cir. 1999). "[A]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." Kaiser Aluminum & Chem. Corp. v. Bonjourno, 494 U.S. 827, 835 (1990). The first step in this analysis is to determine whether the statute is reasonably susceptible to more than one interpretation or whether, on the other hand, it has a plain and unambiguous meaning. Dobrek v.

Phelan, 419 F. 3d 259, 263 (3d Cir. 2005). If the statutory language has a plain and unambiguous meaning, the analysis ends there. Id.

The language at issue is as follows:

> It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140. Black's Law Dictionary defines the word "inquiry" as "a request for information, either procedural or substantive." Black's Law Dictionary 864 (9th ed. 2009) (quoted in Edwards 610 F.3d at 223). This definition, which corresponds to the ordinary meaning of the term, would include the kind of workplace inquiry alleged in this case. However, Congress did not rely solely on the word "inquiry" to describe the protected situations; rather it employed the more broad phrase "any inquiry." 29 U.S.C. § 1140. It should be beyond dispute that Congress would not use the phrase "any inquiry" if it meant to include only a particular type of inquiry. See Adams Fruit Co. v. Barrett, 494 U.S. 638, 645 (1990) ("[B]asic principles of statutory construction . . . require giving effect to the meaning and placement of the words chosen by Congress."). Moreover, the use of the phrase "give information" in addition to "testify" confirms Congress' intent to protect people in settings outside of formal hearings, and thus supports a broad reading of the phrase "any inquiry."

In sum, the Court finds that the language of Section 510 unambiguously includes protection for inquiries that occur at the workplace. Thus the Court will not dismiss plaintiff's claim based on retaliation under the whistleblower-protection provision of Section 510.

V.   **Individual Defendants to Claims Alleging Violation of Section 510**

Defendants argue that individual defendants Stephen Fox and Yishai Kedar are not proper

parties to this action. Defendants claim that, while Section 510 is framed in terms of "any person," the Third Circuit has rejected claims brought against parties other than the employer. (Mot. to Dismiss First Am. Compl. at 6.)

It is correct that courts in the Third Circuit have rejected claims against parties who are completely outside the employment relationship. <u>See, e.g.</u>, <u>Battoni v. EBEW Local Union 102 Employee Pension Plan</u>, 569 F. Supp. 2d 480, 494 (D.N.J. 2008) (rejecting claim against trustees of union pension and welfare funds). However, in this case, plaintiff alleges that defendants Fox and Kedar were managers who had authority to, and in fact did, alter her benefits and terminate her employment. (First Am. Compl. at ¶ 23.) Defendants have not cited any cases in which similarly situated managers were found not to be proper parties to an action under Section 510.

Both the plain meaning of Section 510 and decisions from other federal courts support the conclusion that under the circumstances presented here Fox and Kedar are proper parties to claims under Section 510. Section 510 is phrased in terms of "persons": "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . ." 29 U.S.C. § 1140. Notably both "employer" and "person" are defined by ERISA. <u>See</u> 29 U.S.C. § 1002(5), (9). The Court thus assumes that Congress chose the term "person" deliberately and did not intend to limit plaintiffs to a single defendant, their employer, in this type of case. <u>See</u> <u>Custer v. Pan Am. Life Ins. Co.</u>, 12 F.3d 410, 421 (4th Cir. 1993) ("In light of the plain language of the section, we cannot agree with the defendants that Congress intended to limit those who could violate [Section 510] to employers.") Moreover, the conduct ascribed to Fox and Kedar in plaintiff's complaint is precisely what the plain language of the statute proscribes. That is to say, they are

persons who allegedly discriminated against and discharged a beneficiary for exercising her rights under a protected plan.

This reading of the plain language of Section 510 as including managers situated like defendants Fox and Kedar is supported by decisions from other federal courts confronted with similar circumstances. See Simons v. Midwest Tel. Sales & Serv., 433 F. Supp. 2d 1007, 1013 (D. Minn. 2006) (permitting claim against company president who fired plaintiff); Warner v. Buck Creek Nursery, Inc., 149 F. Supp. 2d 246, 257 (W.D. Va. 2001) (permitting Section 510 claim against a part-owner and general manager); Thomas v. Telemecanique, Inc., 768 F. Supp. 503, 507 (D. Md. 1991) (declining to dismiss Section 510 claim against coworker); see also Swanson v. U. A. Local 13 Pension Plan, 779 F. Supp. 690, 702 (W.D.N.Y. 1991) ("[I]ndividuals may be named as defendants in a [Section 510] claim, but only if their alleged activity has directly and fundamentally altered the plan participant's employment relationship so as to interfere with his pension rights.").

Given the statutory text and the manner in which courts have interpreted it, the Court concludes that the complaint states claims upon which relief can be granted against Fox and Kedar.

## VI. CONCLUSION

For the forgoing reasons, defendants' Motion to Dismiss is denied. An appropriate Order follows.